IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOHNNIE EDDIE TAYLOR, TDCJ #374956, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. G-05-0255 |
| SANDRA SMOCK, *et al.*, | § § § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

State inmate Johnnie Eddie Taylor (TDCJ #374956) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. Taylor appears *pro se* and *in forma pauperis*. At the Court's request, Taylor has provided answers to interrogatories about his claims. (Doc. # 15). The State Attorney General's Office has further supplemented the pleadings with a special report and administrative record. (Doc. # 34). After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court concludes that this case must be **dismissed** for reasons that follow.[1]

**I.     BACKGROUND**

Taylor is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, TDCJ) at the Jester III Unit in Richmond, Texas, where he is serving a life sentence. Taylor's complaint concerns medical care that

---

[1]     On October 25, 2007, this case was reassigned to United States District Judge Melinda Harmon pursuant to General Order 2007-10. The case is being handled by the undersigned by agreement of the judges.

he received on February 3, 2005, when he was in custody at the Ramsey II Unit in Rosharon, Texas, where Taylor was formerly assigned. Taylor sues three nurses assigned to work at the Ramsey II Unit: Nurse Practitioner Sandra Smock; Licensed Vocational Nurse Bromley; and Licensed Vocational Nurse Cassiano. Taylor also sues two supervisors, including Practice Manager Kevin Hanna and Medical Director Michael Warren.

The medical records reflect that Taylor has a history of obesity, hypertension, and insulin-dependent diabetes mellitus, among other issues. (Special Report, Doc. # 34, Exhibits B and C). Taylor also has a long history of eye disorders. Significantly, Taylor was diagnosed with glaucoma in 2002.[2] He had "trabulectomy" surgery to reduce the pressure on his right eye in May of 2004. In October of 2004, Taylor complained that he was unable to see out of his left eye. Taylor had another trabulectomy on his left eye in November 2004, when it was noted that his glaucoma was worsening. In December of 2004, Taylor was diagnosed with advanced glaucoma.

According to the pleadings in this case, Taylor submitted a sick call request to the Ramsey II Unit infirmary on February 1, 2005. On February 3, 2005, Taylor was seen in the clinic by Smock, a nurse practitioner, complaining about a "rash in his left eye." Smock

---

[2]   The Attorney General Office explains in its special report that "[g]laucoma . . . is a disorder associated with pressure in the eye, and is characterized by damage to the optic nerve, with consequent visual loss, initially peripheral, but potentially blinding if relentlessly progressive." (Special Report, Doc. # 34, at 9). Glaucoma is the single most common cause of irreversible blindness in the African-American population, which has a five-fold greater risk of developing glaucoma. (*Id.*). The medical records in this case reflect that Taylor is African American. (*Id.*, Exhibit A, at 11).

prescribed some ointment to treat Taylor's eye.[3]  Taylor claims that the ointment prescribed by Smock "caused him pain and burning in the eye."  Taylor immediately returned to the clinic that same day to see Smock, who discontinued the treatment and prescribed a different type of ointment.[4]  On February 4, 2005, Taylor complained that his condition was worse.  Although Taylor asked to see Smock, he claims that LVN Cassiano referred him to LVN Bromley, who was the nurse on duty that day.  Bromley examined Taylor at the infirmary on February 6, 2005.  The next day, Taylor was sent to see a specialist at the John Sealy Hospital run by the University of Texas Medical Branch ("UTMB") in Galveston, Texas, where he was admitted on February 7, 2005.  The specialist diagnosed an eye infection (endophthalmitis), among other problems, and performed surgery to inject antibiotics into Taylor's affected eye on February 7, 2005.[5]  The procedure was not successful.  Taylor lost sight in his left eye, which was eventually removed because of the infection.

---

[3]   Medical records show that Smock prescribed a "triple ophthalmic ointment" (Triple Antibiotic Opht).  (Special Report, Doc. # 34, Exhibit C, at 30-31).  In an affidavit that accompanies the special report, Smock explains that the ointment she prescribed was "a mild, soothing antibiotic ophthalmic (eye) ointment used to treat eye infections."  (Special Report, Doc. # 34, Exhibit B, Affidavit of Sandra Smock, N.P.).

[4]   The medical records show that Smock discontinued the triple antibiotic and replaced it with Erythromycin Opht.  (Special Report, Doc. # 34, Exhibit C, at 28-29.  According to Smock, both of the antibiotic ointments that she prescribed "can commonly cause a burning sensation when applied to the eyes."  (Special Report, Doc. # 34, Exhibit B, Affidavit of Sandra Smock, N.P.).

[5]   Medical records show that Taylor was informed, prior to the surgery, that there was a risk that he could lose vision and that he could also lose his eye.  (Special Report, Doc. # 34, Exhibit B, at 24-30, 37, and Exhibit C, 1-4).  Taylor indicated that he understood the risks associated with the procedure.  (*See id.*, Exhibit B, at 37).

Taylor complains that the defendants were "negligent" in this case and he seeks damages under 42 U.S.C. § 1983 for "medical malpractice." Taylor seeks $ 1 million in compensatory and punitive damages for his pain and suffering. The Court concludes, however, that the complaint must be dismissed for reasons discussed below.

## II.    STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Of course, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In this instance, the State Attorney General's Office has supplemented the pleadings at the Court's request by providing a special report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987), also known as a "*Martinez* report." (Doc. # 28). In *Martinez*, the court approved a district court's order asking prison officials to investigate the facts surrounding an inmate's civil rights complaint for the purpose of constructing "an administrative record." *Id.* at 319. The Fifth Circuit has adopted the procedure used in *Martinez* as a tool in which an administrative record is constructed to assist a trial court in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997). The Court notes, however, a *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits.[6] *See Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992); *Hendrickson v. Davis*, 172 F. App'x 48 (5th Cir. 2006), *cert. denied*, — U.S. —, 127 S. Ct. 969 (2007).

## III. DISCUSSION

Taylor contends that the defendants treated him incorrectly and that he was denied adequate care on February 3, 2005, through the time that he was seen by a specialist at the John Sealy Hospital on February 7, 2005. Taylor alleges, therefore, that the defendants are liable under 42 U.S.C. § 1983 for negligence and medical malpractice.

---

[6] The information provided by the special report, which contains medical records and an affidavit from Sandra Smock, does not conflict significantly with Taylor's primary allegation in this case, which is that the defendants were negligent by failing to diagnose his eye infection and treat him properly. The Court has used the medical records and affidavit solely to clarify Taylor's medical condition and to establish a chronology for the care that he received, but not to resolve any disputed or material issue of fact.

6

Taylor's civil rights complaint is governed by 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish liability under § 1983, a civil rights plaintiff must establish two elements: (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.,* that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *see also Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her constitutional rights.") (citing *Doe v. Taylor Indep. Sch. Dist*., 15 F.3d 443, 452 (5th Cir. 1994)).

To prevail under 42 U.S.C. § 1983, Taylor must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511

U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

In this instance, Taylor complains that the nurses identified in the complaint (Smock, Cassiano, and Bromley) were negligent. Taylor faults Smock for mistakenly diagnosing his eye infection on February 3, 2005, and for treating him with ointment that made his problem worse. Taylor faults Cassiano for referring him to Bromley instead of Smock, after Taylor's condition worsened. Taylor insists that the defendants' actions constitute medical malpractice. Taylor's allegations are insufficient to state a constitutional violation.

A careful review of Taylor's pleadings shows that he does not allege that he was denied care by the defendants. Instead, Taylor complains about the care that he received. To the extent that Taylor disagrees with the level of care that he received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

In this case, Taylor specifically complains that the defendants were "negligent," and that the care he received constitutes "medical malpractice." It is well established that

9

allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference[.]" *Gobert*, 463 F.3d at 347 (citations omitted). Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001), *cert. denied*, 534 U.S. 1136 (2002); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

In summary, Taylor does not allege facts showing that he was refused care or that the defendants intentionally treated him incorrectly with wanton disregard for his medical condition.[7] Taylor's allegations of negligence and medical malpractice are not sufficient to establish that he was treated with deliberate indifference and do not state a violation of the Eighth Amendment. Accordingly, based on its review of Taylor's allegations, as supplemented where permitted by the Attorney General's special report, the Court concludes that Taylor fails to state a claim for which relief may be granted under 42 U.S.C. § 1983.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, it is **ORDERED** that the complaint in this case is **DISMISSED** with prejudice for failure to state a claim under 42 U.S.C. § 1983.

**The Clerk is directed to provide a copy of this order to the parties. The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail**

---

[7]   Any allegation that Taylor was denied care is refuted by the medical records supplied in the special report, which show that he received extensive care, including several surgeries, in an effort to treat his condition. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

**to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and (2) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas, on February 28th, 2008.

Nancy F. Atlas
United States District Judge